Good morning. Good morning. May it please the Court. My name is Nancy Crear. I'm General Counsel for the Washington State Public Disclosure Commission and a Special Assistant Attorney General on this case. And joining me today is Senior Assistant Attorney General Linda Dalton on behalf of the state. I'd like to reserve five minutes for rebuttal. There are three issues before you in Washington's campaign finance law challenge here today. A challenge to RCW 4217-1058, a 21-day, $5,000 timing and disclosure provision. RCW 4217-090, a disclosure of contributor name and address requirement. And a PDC rule at WAC 390-16034, which requires disclosure of occupation and employer information of contributors. Why don't you focus on the $25 and the 21 days? The 21-day, $5,000 provision? Yeah, the $25 disclosure. Okay. Rather than going through the $100. Let's focus on the one that's the least amount of money, requires disclosure, and then save time to talk about the 21-day limit or ban, depending. Timing provision, yes, Your Honor. Okay. In looking at all three provisions, the framework is the same as this Court has already identified in Human Life of Washington v. Bromsickle, which, by the way, also examined in the context of the State's disclosure law, which is what this Court called it, 4217-090, which has the 25-day disclosure contributor, more than $25 contributor disclosure requirement. This is well-settled law, Your Honors. The disclosure. Okay. So we've read the brace and we know, you know, we've gone through the various cases, all of those. So first of all, what's the governmental interest on the $25 disclosure? And maybe you can explain that. Okay. In other words, what does the State get out of or the public get out of someone who gives under, you know, $25 that they have to disclose their name and address, certainly their address? What's the point? It's more than $25 requirement, Your Honor. And as the unrebutted testimony of Doug Ellis in the record establishes, the State's interests are multiple. First of all, Washington State has a history of smaller contributors. And providing information to the public, and Mr. Ellis' declaration provides just one example, if you look at $25.01 up to $30, just that bucket, if you will, just for a one-year period in Washington, that reveals $1.5 million in contributions. Well, okay. So you aggregated it. But what does it tell you? You're not answering Judge Fisher's question, I don't think. What purpose does it serve to disclose? What's the benefit of having the name and the address? The benefit, Your Honor, is these reasons. First of all, you see patterns of contributions. How? In State, out of State, this county, that county, whether someone from outside the county is supporting or opposing a particular candidate or ballot measure. So patterns of contribution, where the contributions are coming from? First of all. Generally speaking. Okay. So what else? Is that it? No, that's not it. What else? Secondly, it helps the State provide an enforcement mechanism for the anti-concealment laws. And we gave an example of that in the Mr. Ellis' declaration on the Tagaris case. In that case, there were examples of an employer who had fronted the money, loaned the money, given bonuses of money to his employers as a way to avoid contribution limits. But that, but on the 20, but that, the employer identity doesn't come in until you give over $100. But, Your Honor, even at the. So what, what do you get? Okay. How does that, how does the $25, you know, $25.01 up to $100? It gives you a tremendous amount of information, and it's unrebutted in the record on that, Your Honor. If you look at Washington, we're not just looking at Seattle. We're looking at Yelm. We're looking at Prosser. We're looking at all kinds of communities where that kind of money still comes into play, and that's not assuming that that kind of money does not come into play also in the statewide elections such as the gubernatorial, Secretary of State, Lieutenant Governor. So it comes into play. I don't, I still don't. What does that mean, it comes into play? It informs the voters of where the money is coming from. And the very point of Initiative 276 was to enable the voters to follow the money, not just follow the big money, but follow their money. Where's my money? My money went to this particular candidate. And to suggest that the contributors who had given. But this is a ballot measure. Pardon me? This is a ballot measure, not candidate. Right. I'm just giving you some context here. Well, let's talk about the facts of this case, okay? Ballot measure. The question is, what is the relevance of information of contributors between 25 and 99? But it's 25 is the trigger. The more than 25. That's the reporting. That's where we're focusing on, 25. If it were 50, there's some cases that have talked about $50. But 25, and our cases have raised this issue. The Supreme Court has raised it. At some point, you get down so low in the level of what you are requiring to be reported that it begins to lose touch with the purpose of the disclosure. So you still haven't given us, other than knowing where the money comes from by location, what the name-slash-address component of the trigger of the $25 contribution is. It enables. To just raise your hands and say, well, it's everything. It doesn't cut it. Well, I disagree, Your Honor, because that's not what this. Well, fine. It doesn't cut it for this judge. And I get the words. I appreciate that. You better find out how to answer our question. I appreciate that. But the court in Human Life of Washington did not take the view that you've taken. And we have to go by what has been established both in our courts. How about taking the view of the court that you're confronting today so you can at least put our minds at rest, okay? You're representing the state. The state has to articulate its governmental interest. So please, help us. It's an informational interest, Your Honor. And, in fact, in Buckley v. Vallejo, the U.S. Supreme Court in being pressed on whether at that time a $10, $100 provision, whether that was in effect, said that we cannot require Congress to establish it has chosen the highest reasonable threshold. The line is necessarily a judgmental decision. Right. Judgment supported now by reasons. We've got that. We've read Buckley, okay? So the question is, what's the rationale besides, it sounds like the rationale for $25 triggering a name and address, so far I've heard you say it tells us whether the contributions of these people that who knows who they are don't live in Washington. Where do they live, Your Honor? Okay. So they live in Yakima. But that is information that the voters are entitled to have. Okay. Now, how do they get the information? As the declarations of both Doug Ellis and Michael Smith established, that information is available free on the Internet, both in images of reports filed, campaign finance reports, as well as a searchable database. So if I go on the Internet, just so I understand, if I go on the Internet and I click on contributions, there will be a list of all the people who have given their name and address up to whatever point of the election cycle has been, and they're aggregated under that category. It's a searchable database, so you can choose political committee, you can choose a particular year, you can choose a contributor. How do I find out? I want to know everybody who has contributed, and I want to be able to know where the contributions came from. So I can, how do I find out in the range of people who have given their addresses, how do I know, how do I find that on the Internet? You go to the PDC's website, and you can let's just choose search the database. And that populates boxes, or blank boxes that you populate. And you choose what fields you want to select. Date, name of contributor, city, occupation, whatever. You populate that box. There's a pause as it gathers the data, and up pops the summary of the data that you have selected. Okay. What does it show? It shows, let's just choose. I want to know how many people out of State have contributed to this ballot measure. What it would do is show you a report based on whatever criteria you selected. I've given you the criteria. And it would show you a report of what met your criteria. Yes. And then on the left-hand side, am I answering your question? No, you're going a long way around. I'd like to know, simply put, if I put in, I want to know by geography where the contributions to date have come from. Okay, you've given them the data field. It's now been populated. What does it show me? It will show you who contributed based on those criteria you selected. Okay, the whole list of everybody who's contributed, including everybody down to the $25 contributor. It will sort. There are different, it comes down in columns. Yes. And it will sort by the criteria selected. And within there, you can re-sort. So, for example, let's say you want the oldest contribution to the most recent contribution. How about sticking with my hypothetical? It can sort by address. Stop, stop. We're using up a lot of time going back and forth. Okay, and if you want to make use of your time, you can slow down a bit, okay? This is a very challenging case. We're looking here for information, okay? So this is your shot at representing the interest of Washington. So let's make the most of it. Okay, so here's the question. We're concerned about what is the value of getting information about a bunch of $25 contributors who have given their name and address. Okay, you're saying, you started by saying the Washington voters want to know, and I can understand that they might want to know, where is the money underlying this ballot proposition that may turn out to be beneficial to oil companies or tobacco companies or whatever? We want to know where the money is coming from, how much is it from Washington people, and how much from crazies in California or, you know, back east or wherever. Okay, so in order for me to find that, you're saying that I can go on and I can say, all right, there's a million dollars that has been contributed to this ballot proposition. I want to know how much of that money came from out of state. If I put in contribution and sort it by geography, I will get a printout of all the different geographical locations represented in the database. Is that correct? Okay, now if I want to find out how much of that was big money as opposed to little money, I want to find out how much of that was just grassroots $25 contributions. Let's just say I really want to know how many people are coughing up $25, and that's how much they're willing to invest, but that tells me something about the grassroots. I can get that information? You sort by the dollar amount, Your Honor. So, for example, you could go to a recent ballot. Don't give me a for example. I gave you an example. $25. Yes. Thank you. All right. So let's move on. I have the same inquiry in a somewhat different context. We have cases from our court, such as Canyon Ferry, and there have been cases from other courts, including the Supreme Court, that suggest, you know, there is a First Amendment right of the contributor at some point not to be revealed or disclosed. And there's a balancing involved. As the contribution disclosure limit gets lower, the balance may tip at some point. And I think one of the things we're searching for is $25 beyond the tipping point. Would you treat $1? Would you treat a requirement that all contributions, no matter how small, be reported, disclosed by the political committee? Would you treat that the same way? Is there a line in there? And what leads you to say the State's interest in a figure as small as $25 is sufficient to justify saying that's okay? Repeatedly, the legislature has retained that provision, Your Honor. And looking at the interest of the voters, as first articulated in Initiative 276 and the culture of transparency in Washington, the courts have repeatedly said that that kind of line drawing, if you will, is better left, and if I may quote the district court, to those toiling in the vineyards. These are necessarily judgmental decisions based on the particular politics, campaigns, ballot measures, stakeholder interests, voter interests in a particular State. And the legislature is entitled to embrace all of that information and to make a judgment call, which is what the Buckley court called it, on where the appropriate disclosure threshold should be. And the case law suggests to you that it is an anomaly for the court to step in and wear that legislative hat, that policymaking hat. In Canyon Fury, we did. Now, granted, that was a case that called upon the contributor to make a report, not the political committee.  But that case recognized, from our court, recognized, you know, there is a First Amendment right that's affected here on the part of the contributor, and a zero limit, that is, a requirement that everything, including in-kind contributions, be reported, that went too far, even though presumably that was a legislative judgment as well. So we're searching for what's the State interest. And I understand the State interest is the same whether it's $1,000, $100, $1. But is there, and line drawing is always an artificial exercise, but is there something that supports the proposition that $25 is a reasonable place to draw the line? Well, the evidence in the record shows it is. If I may point you back to the declaration again of Doug Ellis, who not only described the information that is revealed at the more than $25,000 disclosure bench part, bench point, but also he talked about, and this is unrebutted in the record, the reality in this day and age of Internet online donations of what are called small donors. So let me ask you one. So if it's so important to have disclosure of the $25-plus contributors, why doesn't it, why doesn't the State also ask for the employer's name? It does. It provides more information. Well, between $25 and $100, the contributor doesn't have to give the employer's name. The $100 is the function of the rule that's being challenged here, and that was the $25. I'm not talking about the $100. So why is occupation? If I make a $26 contribution to some ballot committee in Washington, I only have to give, I only have to reveal my name and address, correct? At the more than $25, correct. Right. I don't have to give the employer. Correct. That's at the more than $100. Right. So, but if it's so important to have all this disclosure, why isn't it equally important to have at the $25 level the employer's name? But again, Your Honor, this is, this is these judgment calls on what works in a particular State. And the fact that there are multi-tiers of disclosure provided, some at this level, more at this level. There must be some notion that at these lower levels it's more burdensome to produce this, to require a contributor who's giving this amount of money. There's nothing about that. Well, I mean, why would you not have the same disclosure requirements at $25 and $100? We could choose 103. We could choose 99, and many States have chosen 99. The question is, is it. No, but you draw a distinction in what has to be disclosed at these various levels. It's layers of disclosure, Your Honor, if I may, if I may emphasize that. The U.S. or the Washington Supreme Court described 4217 as a mosaic. That is, it has multiple pieces to it. And it was designed that way. There are multiple types of disclosure. There are layers of disclosure. And it's a mosaic that the people themselves designed in how this is to fit into this mosaic. And what troubled the Washington Supreme Court in that particular case in Fritz v. Gordon, you start taking out chunks of the mosaic, and you create loopholes to create nondisclosure, nontransparency, which was completely the opposite of the intent of the initiative. So when you're looking at, for example, why 25 or why 100 or why this time period or why ballots go out at the time they do or why candidates, for example, have an excess amount of time to file for candidacy, all of those are things that the legislature takes into account in looking at its particular election system. And the Supreme Court has been very clear that in designing those systems, both the election law side of the House and the campaign finance side. You've got another issue in this case. Pardon me? You've got another issue in this case. Yes, Your Honor. You've almost used all of your time. I'm going to give you five minutes, and I'd like you to explain in five minutes the 21-day limitation. You've talked about the high-speed Internet, how quickly information. You ban, for the 21-day period, you ban contributions over $5,000. That is the state does. Right? So you can give anything you want. We disagree that it's a... Once the 21 days is hit, you may not contribute anything more than $5,000. Isn't that correct? If we're talking about ballot measures, yes, Your Honor. That's what we're talking about. And I would not concede, Your Honor, the term ban. Fine. The limitation. But for that period of time, they cannot give any more. Nobody can give more than $5,000. Correct. You're correct in that. Now, what's the rationale? The district court found that there's no rationale. Because in the instant information age, there can be lots of information so the voters can get it right away. There's no rational basis, no basis for making it as long as 21 days. Well, if I can describe what the district court did, it found the informational interest to be sufficient. So then it turned to the 21-day clock, if you will, and found that something less than that might be appropriate. It didn't say what that would be, but that was the part that concerned the court. And if you look at how the 21-day provision, again, fits within this mosaic, there are other 21-day provisions within 4217. There's reports due at that time. And the record shows that the thought was to have voters have access to that information at the time they are voting. Right. Currently, and as recently as 2010, when the legislature recodified this provision of law, currently in Washington, at the time this record was done, it was 38 of 39 counties. Today it's 39 of 39 counties vote by mail. So as this court recognized in the Arizona Right to Life PAC versus Bayless, this change in voting, we don't all go to the polls anymore on a particular day. Counsel, we know that. Just can you make your answers a little more crisp? The reason that the 105-8 still survives fine, Your Honor, is that if you have early voting. Well, that's one of the reasons. We have early voting. Voters who decide to vote 21 days out or 18 days out or whenever the period is, they vote on the information that's available at that time. They know that they're running the risk that in the meanwhile, the candidate they voted for, you know, has a brain freeze in a debate. They know that he may withdraw from the election. So they know at that time that they're voting on information that's only as good as that time. Meanwhile, in order to protect the early voting interest of the most earliest of the voters, you're saying that Washington prohibits anybody making a contribution over $5,000 to preserve the information base of somebody who elects to vote 21 days out. Your Honor, it's not the job state to make voting more difficult. But it is making contributions and supporting ballot measures more difficult. There is absolutely nothing in the record that supports that, Your Honor. How about a ban? A ban on contributions is a limitation. The Supreme Court has made it clear. Disclosure is one thing, but restricting the giving of money is quite a different matter. This restricts, does it not, the giving of money in the last 21 days, three weeks before the election. Three weeks before an election is one heck of an important time period, is it not? It's an important time period, Your Honor. But the record, again, I have to keep pointing you to the record. The record shows absolutely no impediments for this statute that's been in effect for years. In fact, if you look at the declaration of Ann Levinson, this timing provision is well known. Just like if you were a candidate running, you know you have a time period when to file your candidate filing statement. This time period is well known in Washington. Campaigns plan around it. And frankly, with respect to ballot measures, it has provided absolutely no impediment. Our records are being shattered up in Washington with the amount of contributions coming in. With 105.8 fully in place, functioning as it has been for the last several years. Any candidate or ballot committee prefers early money to late money. But sometimes you get money when you can get it. And there can be developments, be it a candidate's brain freeze or some historical opportunity. So suddenly a contributor decides, wow, this is important to me. I hadn't thought of this ballot measure in this fashion, but it's going to really affect my business big time. I'm ready to write a big, fat check. But because it's now three weeks from election day, I can't do it anymore under Washington law. There's nothing in the record that shows that kind of impediment, Your Honor. And so that's exactly the otherwise what's the statute do? But where's the declaration that shows that's an impediment? It doesn't. You mean that it's not an impediment as in a drawback or that that situation can't happen? That situation can happen. That situation has not shown it has chilled anyone's contributions. Well, it's because they haven't hit the wall yet. But you're going to have a bunch of ballot measures on the ballot next year. And if the law stays in place, someone hits that predicament, what are they supposed to do? There are other options, Your Honor. They could still make an independent expenditure. Remember, this is a contribution timing provision to a political committee. That's not the only way that political speech is engaged in in Washington. Now, we've all known the campaign spending laws have developed leaks all over the place. I'm not sure it's a good answer to say, well, there's this leak over here that will let them get around. Well, an independent expenditure is something that the courts have found to be a viable alternative to speech. There's certainly significant dollars pumped into those kinds of expenditures in Washington. Is there any authority that has said that you can limit contributions or during a given period of time limit contributions because they can always spend money in ways that get around the campaign finance laws? I have yet to see a court decision that recognizes that as a reason for permitting a limitation. I think it's just a reality, Your Honor, that there are different buckets of money that may be available to people who wish to engage in campaign speech, and the most modern way we have of that is today is there's contributions, there's independent expenditures, and that's just the reality. And I'm completely confused on my clock at this point. You're out of time, over time. Thank you. Thank you. We got you there. May it please the Court. My name is Jim Bopp. I'm an attorney for the Plaintiff's Family PAC. First, as to the harm of the 21-day contribution ban over $5,000, if you consult the supplemental joint appendix at page 73, you will see that the SEIU wished to make a $250,000 contribution to a ballot measure committee, but they had to refuse it because it came in within the 21-day period. You also see on page 74 of the supplemental joint appendix an Indian tribe that sought to make a contribution of $30,000, but within this period, and was not able to do that because of this law. And furthermore, the plaintiffs had contributors of $20,000 and $60,000, but they couldn't make their contributions because of the $5,000 prohibition within the 20-day period, and as a result the contribution was not made, the speech was not made, because $10,000 was simply not enough to mount any sort of worthwhile advertising campaign. Now, the problem that the State has argued, counsel for the State argued, that you had those, especially those big contributions, could have just been an independent committee or an independent contribution. That there were other avenues of getting money and getting their viewpoint. Well, not if you want to pool your resources. Not if two people, as in our case, wanted to pool their resources, because then you're a political committee, and then you're subject to the $5,000 ban. So, I mean, it's true that one rich person that has the money can spend the money and is not subject to this ban. Of course, that indicates this is under-inclusive, because it doesn't meet the informational interest that they say is so important here. But in any event, as soon as you bring two people together, you have to form a committee, and bingo, you're subject to the $5,000. Now, the problem they have is Citizens Against Rent Control, which said that it's unconstitutional to have a contribution limit to a ballot measure committee. They said that this limits not only the contribution, but it limits the speech, the expenditures that would be made, and these are unconstitutional. So to get around this fact, they want to rename what they are doing. This is semantics. They want to argue about whether or not this is a contribution limit. They say, no, it's a timing and disclosure limit, because they think that if they can put it in the disclosure box, which I'll get to in a minute, they can do anything they want, that they have complete and total discretion, and you are to give complete and total deference in the name of disclosure. Now, their argument is this, to get it in the disclosure box, that the regulation forces people to give contributions before the 21 days if they want to give more than $5,000. And as a result, people who want to opt to vote early will then know this information if they are interested in it. Well, the problem is, is that they are ignoring the direct effect of the law and looking at an indirect effect that the law might have if certain conditions are met. The direct effect, of course, is that when you are in the 21-day period, you have a $5,000 contribution limit. That limits speech. As the Court said in Citizens United, disclaimer and disclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities. This is a ceiling on campaign-related activities, i.e., a contribution to a ballot measure committee. So they want to look to the indirect effect. If people know about this ban within 21 days, if they know before the 21 days starts that they will want to make a contribution of more than $5,000, if they have the money together and they are ready to do it, then they, if they make it 21 days before, well, then that information might be available to those who are interested in it. Well, that's the only way they can get it into this, quote, disclosure box. Kennedy. Counsel, don't walk away from the mic, okay? Huh? Don't walk away from the mic. I'm sorry. Yes, I'm sorry. That's the only way that they can get it into this disclosure box. Well, this is an indirect effect. This would be like in Citizens United, the Court, after they said, hey, corporations have a right to do independent expenditures, then at the end of the opinion they say, well, yeah, but there's a disclosure interest. And you can ban corporations from making expenditures because people who contribute to that corporation, if they, corporation is banned, those contributors might give to PACs or candidates that would then be reported. The Court didn't say that. They said we've got two different regimes here. It dealt with the facts of the case before it, and it didn't. So I was just analogizing the situation. Counsel, a question just for clarification. The $5,000, you can give any amount you want up to the 21 days, correct? Yes. Unlimited amounts. Yes. Okay. And if you want to give an additional $499,000 or whatever, let's just say, if you want to give an additional $5,000 within the 21 days, you can? I can. You're not prejudiced by the fact that you've given $100,000 before. That's correct. It will allow you to put in new money of $5,000. That is correct. Okay. So essentially this is targeted at big last minute, last three weeks, more than a minute, big contributions. Yes. Now, there's an exception for political parties, isn't there? Yes. Okay. So how does that cut? Well, that cuts against the rationale that they are claiming for the statute, because, you know, as in a Republican Party, Minnesota versus White, if an interest is under-inclusive in terms of their enforcement of that interest in relevant and important ways, then it means the interest is really not what they are pursuing. They're pursuing some other agenda. In other words, it undermines the claimed justification for the statute if they leave major areas where that interest would apply, not apply. Now, moving then to the ‑‑ I guess the final comment I would have in the 21 days is that because a voter may choose to vote early, it has never been recognized as a justification for limiting political speech, limiting contributions, limiting the ability of people to put in money of $5,000, and talk about ballot measures, has never been recognized as justification for overturning a Supreme Court decision which said these contribution limits are unconstitutional. How frequently do these large contributions have to be disclosed to the whatever it's called, the Public Disclosure Commission? Excuse me. I didn't hear your question. How frequently do these large contributions, or even the $5,000 contribution within the 21-day period, how frequently do they have to be disclosed to the Public Disclosure Commission? Within 48 hours, they have to be disclosed if they're over $1,000 within that period of time. And do they go up online right away? They say within a couple of minutes. If it's electronically filed or if it's filed by paper, they can get it up in 15 minutes. So during this, and we didn't challenge that disclosure provision of late contributors, late large contributors of $1,000 or more that are making contributions in that period of time, so that that information is available to the voters who find it relevant and may act on it. It's the prohibition on making the contribution over $5,000 that was challenged. Now, I'd like to turn to the $25 and the $100. And here is where we get into their second point that I mentioned earlier, that they seem to think that they have total and absolute discretion, and you are to exercise total deference whenever they do something in the name of disclosure. Now, the best example I can give, other than, you know, the analysis we have done. The court does seem to suggest disclosure is the quid pro quo, if you will, for the restrictions on the state's ability to put caps on contributions. They have upheld disclosure regularly since Buckley, including in MCFL, and most recently in Citizens United. Spoken favorably of it even as recently as Citizens United. Yes, in Citizens United. They upheld a report of contributors over $1,000 to electioneering communications. Right. And so, yes, just like the $1,000 late, you know, contributor disclosure that Washington has, which we are, of course, not challenging. And what they have said is that that is under intermediate scrutiny. Another example of regulations that are judged under intermediate scrutiny are contribution limits. So in Randall v. Sorrell, well, in Buckley, the court said, look, you know, we give discretion on contribution limits. As long as it's not a difference in kind, then if it's just a difference in degree, then there's some deference that is paid there. But then we get to Randall v. Sorrell in 2006. Under intermediate scrutiny, exacting scrutiny, where deference is given, the court strikes down Vermont's contribution limit of the biggest being $400 per election cycle to a governor. They struck them down. In other words, they didn't just roll over and say, oh, well, you know, we give deference. No, they said, what is the justifications for contribution limits, and are these contributions too low? And they said, yes, these are too low. In other words, you have to connect the rationale with the limit in order for it to be upheld. And that's what we are asking you to do here. The only thing that she has now said about the purpose of the $25 reporting is geographic pattern of contributions. Well, you know, we're talking about a ballot measure. We're talking in this case, in fact, the one that my client wanted to participate in, was whether or not the law that provided every other benefit but marriage to gay couples, a statute that had been passed in Washington, would be ratified by the voters. Well, see, that's a ballot measure, and the ballot measure is about the merit of a law. So how could it possibly be? I'm sorry. Going back to Randall. Yes. Was Randall a disclosure decision? No. It was a contribution limit. But the contribution limits and disclosure are both under intermediate scrutiny. Well, but wait a minute, counsel. That's too facile. They've made quite clear that contribution limits are quite different from disclosure limits. So to say they went ahead in Randall and went beyond the legislative judgment, that was on limitations on contributions, what you're talking about in the 21-day thing. But we're talking about disclosure. They've upheld contribution limits to candidates. They've upheld disclosure. Yes. Okay. Both are judged under intermediate scrutiny. Maybe so, but it's a different level of scrutiny in terms of what you have to do. No. That's my point. It's the same level of scrutiny. Intermediate scrutiny or exacting scrutiny for contribution limits and for disclosure. I understand. But in terms of the standards and the balancing of what's at issue. In terms of the interest. They are. Yes. Fine. You argue it your way. I'll read the cases. Go ahead. Thank you. In terms of the interest, they're different. I agree. Thank you. So what I'm talking about is how the Court applies the analysis. If it was true that intermediate scrutiny or exacting scrutiny meant that you just simply upheld the law because of deference, as they are arguing. So what's your principle? We're talking about disclosure. We're talking in the 50, excuse me, in the 25 to $100 range, the disclosure is name and address. Okay. So what's the problem with people having to give their name and address, you know, when they make contributions within that range? Well, the problem is that, as the record reflects, is that people are discouraged from making contributions because that private information is revealed. The studies that we have cited show that 60 percent of the people would think twice about making a contribution if they knew their name and address would be revealed, and only as to the second requirement, after $100, of the employer, only 23 percent thought it was okay that their employer would be disclosed. So you're saying that even in the $100 range, that's unconstitutional? Well, I'm sorry. We are not. We are only challenging the requirement of an employer and occupation at the $100 level. The ---- There's no governmental interest in identifying, as counsel argued in her opening? Well, first, no. Where is the ---- Not at that level. Not at that level. Not at $100. What level is it permissible? Well, it ---- Give us a level. What would your argument be? We haven't challenged $1,000. So we're willing to say $1,000. $1,000. But anything below $1,000, people can give. $999, and for all we know, the employer is giving them a bonus at the end of the year. Well, that's illegal. Yes, it's illegal, but ---- It's illegal to ---- That's after the fact, isn't it? Well, true, true, but I mean, we're still talking ---- Illegal activity, and it's illegal because the State had to carry the burden of proving it. So isn't there an enforcement interest on the State that the Supreme Court is identifying? No. Wisconsin right to life rejected that sort of claim as a prophylactis upon a prophylactis. That is, you have multiple levels of regulation that go way beyond what the core concern is. If the core concern is conduit contributions, then you make them illegal. They have made them illegal. They could also require employer and employee identification information be provided to the State without publicly disclosing it, if that is their interest. And then they could, you know, search through and try to figure out if too many people that work for a particular company are giving contributions and go investigate them. It's the question of the public's informational interest is becoming very attenuated, because the contribution is from the employee, not the employer. And when you identify the employer, it's as if it's actually misleading. It misleads the voter into thinking that the contribution came from the employer. Aren't there employers that strongly urge their employees to make certain contributions? Yes. If you, in fact, have a campaign and discover that 60 percent of the people who give to this campaign or this ballot issue committee all work for the same company, isn't there a permissible inference voters could draw from that as to where the support's really coming from? Well, possibly. The company is paying the money itself, but it's using the influence it has over its employees to accomplish the same thing. Yes. And that's why we are not saying categorically that this information cannot be required. And what we're saying is that the level at which the information is being required is too low. What's the right level? I'm sorry? What's the right level? $1,000. Okay. We have not challenged $1,000. Your position is that employment information can be required at $1,000, and your position is that name and address can be required at what level? And the employer and employee. But at what level can ‑‑ is there a lower level at which the State can require disclosure of name and address without employment information? Or is just $1,000 the lowest level the disclosure of any kind should be required? As best as ‑‑ I mean, my personal opinion is that when you're talking about in the ballot measure context that the informational interest is what the financial ‑‑ what financial contributors will benefit from the passage of the ballot measure. That's what the interest identified in Canyon Fair. Then it's got to be a substantial contribution to provide any useful information. I want to listen to your explanation, but I would like an answer to the specific question, which is ‑‑ Sorry. I thought I did. Well, you've told me that a $1,000 contribution, it's okay to require disclosure of employer information. Is that the same threshold you would apply for name and address? Is there a lower level that the State can require disclosure of name and address? I'm sorry. I thought I said $1,000 for everything. And any contribution of $999, there's no disclosure at all. There would be no ‑‑ well, there could be disclosure to the government, but no public disclosure. To the extent that the interest of the public is where is the support coming from ‑‑ Yes. I could well understand. The public might want to know, gee, is this ballot an issue of being entirely supported by money that's coming from outside the State of Washington? Why isn't that of interest? As far as large contributors, they will have that information. And the picture would be the same. It's just you're not requiring so many people to be disclosed. You don't have thousands and thousands and thousands, which they literally have. These small contributors ‑‑ and, you know, it's extremely difficult unless you utilize the website, which almost nobody does, to get the information. It's almost impossible to get it. Doesn't the press actually use those quite a bit and look at trends? No. I can tell you just reading the newspaper ‑‑ No. The record, there's two. I can read the newspaper at Honolulu and regularly there are reports as to what proportion of campaign contributions come from out of State. Yes, and they would have that information for large contributors. Only for people that gave more than $1,000 under your formulation. That's what I just said. Yes, that's correct. The proportion of campaign money comes from contributions that are under $1,000. But the picture would be the same. I agree with what you're saying, that, yes, you're not reporting all the contributors. So you would be reporting 70 percent of the contributors or 50 percent of the contributors. But the picture would be the same. If this benefits out-of-State interest, then the out-of-State interest will be given proportionally the same, whether it's small contributors or large contributors. And the same with county-by-county. But are we getting far afield, though, from what we're talking about? We're talking about a ballot measure about whether or not same-sex couples should get ‑‑ No, that's not what we're ‑‑ Huh? That's as applied, but this is ‑‑ Well, in this case ‑‑ You're bringing a facial challenge, correct? Yes, and it would apply other cases. In California, we had a petroleum company, an oil company, that was pushing a ballot measure that would substantially benefit that oil company based in Texas. I assume they gave more than a thousand? Didn't they give more than a thousand? Well, they did, but that doesn't mean that there are a lot of other people who couldn't have been from Texas who may have been giving as well. But they're giving insignificant amounts of money. How do you know that? Well, because if you report at a thousand-dollar level, then they're giving substantial contributions over a thousand. A lot of people these days, counsel, think $900 is a substantial political contribution. Hey, look, I'm not here to justify $1,000. Well? Because that's not my job. Yes, you are. That's their job. You're here to convince us to strike down the $25. Exactly. And being too low. Well, it might bring you slightly closer to the interest that this Court has recognized, which is the financial interest of who would benefit, because now you have some connection. I don't see how you have any connection with where they live, which was the rationale that they give. My time is truly up.  Thank you very much. Thank you. Thank you very much. You have a minute for rebuttal. Thank you, Your Honor. And if I may just focus on a couple of representations that are not accurate in the record. Millions of people access the Public Disclosure Commission's website. It is heavily used by the press. It is heavily used by researchers. Washington State has won national awards, multiple awards for the level of access it provides to voters about who is contributing to their campaigns, who is seeking to influence their vote, who is paying for that and enabling them to follow the money. All right. Point one. What's your second point? The second point is, Your Honor, we would vigorously urge you to reverse the district court on the 1058 issue. We know that. And to sustain. But, Your Honor, you noted Citizens United, which you and I did not have an opportunity to have a conversation about. But Citizens United, Human Life of Washington, Doe v. Reed. We know the cases, Counsel. I start out by saying we've read the briefs. The reason for oral argument is to answer the Court's questions. And the questions that I think that you have posed are answered by those disclosure cases. Good. Thank you. I hope so. Thank you. Thank you for the extra time. All right. Family PAC is submitted, and we'll take a very short recess.
judges: Fisher, Paez, Clifton